**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JEFF HOLHBEIN, | |
| Plaintiff, | 3:08-cv-00347-RCJ-VPC |
| vs. | **ORDER** |
| UTAH LAND RESOURCES LLC, *et al.*, | |
| Defendants. | |

This case is on remand from the Ninth Circuit Court of Appeals for the second time on the issue of attorneys' fees. Previously, the Court granted Plaintiff an award of fees at a reduced rate as well as a reduced award of expert witness fees. Plaintiff appealed and the Ninth Circuit reversed and remanded.

**I. BACKGROUND**

Plaintiff is a disabled individual who uses a wheelchair due to a condition known as fibrodysplasia ossificans progress. He sued Defendants in this Court under the Americans with Disabilities Act of 1990 ("ADA") to require them to remove certain architectural barriers at The General Store in Mound House, Nevada. The case was assigned to the Honorable Brian E. Sandoval. The parties filed cross-motions for summary judgment, and Judge Sandoval granted Plaintiff's motion because Defendants had failed to respond. (June 31, 2009 Order, ECF No. 18). Beyond the failure to respond to Plaintiff's motion, Judge Sandoval found that Defendants

1

presented no evidence to support their contention that the barriers identified by Plaintiff had been removed. (*Id.* at 4). On the other hand, Plaintiff had submitted the declaration and expert witness report of C. Jeffery Evans ("Evans"), which identified the various barriers existing at The General Store as of February 18, 2009. Based on the expert's report, Judge Sandoval ruled that Defendants were violating the ADA and found that the removal of all barriers would be readily achievable. (*Id.*).

On August 14, 2009, Plaintiff filed his Motion for Attorneys' Fees. (ECF No. 20). Shortly thereafter, due to the resignation of Judge Sandoval, the case was reassigned to this Court. (ECF No. 23). The Motion sought $13,997.50 in attorneys' fees and $8,464.80 in litigation expenses and costs, $7,889.80 of which related to expert fees for Evans. (Mot. Att'ys' Fees 8, ECF No. 20). Plaintiff's counsel sought a compensable rate of $275 per hour for 50.9 hours of work.

The Court held a hearing on the issue of attorneys' fees on October 29, 2009. (ECF No. 31). The parties presented a number of arguments during the hearing. First, Plaintiff contended that he had sent notice to Defendants prior to filing the instant lawsuit complaining of the various ADA violations, an issue the Court found important to the amount of fees to be awarded since pre-filing notice would have demonstrated an attempt to resolve the dispute quickly and less expensively. (*See* Hearing Transcript 3:8–16, ECF No. 32).

Defendants represented that as soon as they were informed of Plaintiff's ADA complaints, they "immediately commenced compliance." (*Id.* at 6:23). Defendants "had their parking lot restriped, they had a . . . van-accessible sign put up, they changed the entry door hardware, they lowered the paper towel dispenser, they lowered the toilet seat cover dispenser, and they provided pipe wrap." (*Id.* at 6:23–7:2). When Defendants inquired as to the cost of

making the remaining restroom modifications, they received a bid of $80,000, which was "twice the annual revenue of [the] business." (*Id.* at 7:9). After receiving permission from Lyon County to provide a single, unisex ADA compliant bathroom in The General Store, the bid was reduced to $20,000 and Defendants prepared to "immediately commence compliance." (*Id.* at 7:15–16). It was at this point that Defendants received Plaintiff's Motion for Attorneys' Fees also demanding over $20,000. Defendants, owners of a small-town convenience store in rural Nevada, could not afford to pay both.

After reviewing the briefing and listening to oral arguments, the Court determined that it would "allow $125 per hour on the fees" as well as costs, excluding the expert witness fee. (*Id.* at 10:5–6). The reduction in fee award was based on (1) lack of proof that Plaintiff attempted to resolve the issue pre-litigation, (2) Defendants compliance in making architectural modifications as required by the ADA, (3) the lack of itemization on the work conducted by Evans, (4) the exorbitant amount of time Evans billed Plaintiff to take measurements of The General Store, and (5) the unnecessary presence of Plaintiff's counsel during Evans inspection of The General Store that resulted in billed time. (*See id.* at 10:25–11:9). The Court explained that although all of the hours submitted by Plaintiff's counsel would be awarded, the reduced rate would take into account Defendants' objections to the fee award. (*Id.*). The Court then instructed Plaintiff's counsel to prepare a proposed order reflecting the Court's ruling.

The proposed order was submitted to the Court on November 12, 2009 and read in its entirety that "[t]he Court hereby grants Plaintiff's Motion for Attorney's Fees, Litigation Expenses and Costs in part and denies the motion in part. Plaintiff is awarded attorney's fees in the sum of $6,362.50 and costs in the amount of $575.00. Plaintiff's request for payment of his

3

1  expert witness fee is denied." (ECF No. 33).  The Court accepted and signed the proposed order
2  on November 19, 2009.
3        Plaintiff then appealed the fee award. (ECF No. 35).  The Ninth Circuit held that the
4  Court had abused its discretion in making the award at a "highly reduced rate" because the body
5  of the Order did not contain analysis, the Court having provided its reasoning to the parties
6  during the October 29, 2009 hearing. (9th Cir. Memo. 2, ECF No. 43).  Nevertheless, the
7  Appeals Court determined that "[t]he lack of meaningful explanation" in the November 18, 2009
8  Order "prevent[ed] review and require[ed] a remand." (*Id.*).  The court also held that a denial of
9  expert witness fees, "without explanation," also constituted an abuse of discretion. (*Id.*).
10       On remand, the Court set out to explain its reasoning behind the reduced rate and denial
11 of the expert witness fee that had been given during the hearing, but was not incorporated into
12 the text of the November 18, 2009 Order.  The Court first pointed out that although pre-litigation
13 notice does not determine whether attorneys' fees should be awarded, it is "a permissible
14 consideration" if specifically connected to a reason why the lawsuit, once filed, "would have
15 been resolved more cheaply." (Apr. 27, 2011 Order 2, ECF No. 44 (quoting *Jankey v. Poop*
16 *Deck*, 537 F.3d 1122, 1133 (9th Cir. 2008)).  Regardless of the pre-litigation notice, however, the
17 Court still determined that the $125 per hour was a reasonable rate due to the Defendants'
18 compliance with ADA requirements once the suit was filed, the size of Defendants' business,
19 and the significant harm that a higher award would pose to Defendants' livelihood. (*Id.*).  For
20 these reasons, the award of attorneys' fees was unchanged.
21       The Court further acknowledged that the ADA allows plaintiffs to recover expert witness
22 fees and therefore it awarded Plaintiff an additional $1,000.  While some degree of labor was
23 required to take the various measurements at The General Store to determine ADA compliance,
24

the Court found the $8,000 bill unreasonable for a day's worth of work. Besides being overqualified for the task at hand, the Court also found that Evans billed an unreasonable amount even in light of his qualifications. (*Id.* at 3). The Court reduced the expert fee accordingly and awarded Plaintiff $6,362.50 in attorneys' fees and $1,575 in costs. (*Id.*).

Again not satisfied with the Court's ruling, Plaintiff appealed the fee award. (ECF No. 48). The Ninth Circuit once more determined that the Court had abused its discretion in reducing the attorneys' fees and expert witness fees. (Jan. 5, 2012 9th Cir. Memo. 4, ECF No. 54). The Appeals Court reversed and remanded, ordering this Court "(1) to reconsider attorneys' fees and costs . . . (2) to consider the *Kerr* factors before reducing Kilby's hourly rate, (3) to discuss the evidence supporting the reduction of the expert's fees, and (4) to again consider awarding costs on appeal." (*Id.* at 7).

**II. DISCUSSION**

    **A. Attorneys' Fees**

The ADA states that the court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee, including litigation expenses, and costs . . . ." 42 U.S.C. § 12205. "[F]or a litigant to be a 'prevailing party for the purpose of awarding attorneys' fees, he must meet two criteria: he must achieve a material alteration of the legal relationship of the parties, and that alteration must be judicially sanctioned." *P.N. v. Seattle Sch. Dist. No. 1*, 474 F.3d 1165, 1172 (9th Cir. 2007) (internal quotation marks omitted). Under the ADA, a prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Jankey*, 537 F.3d at 1130 (citing *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1134 (9th Cir. 2002)) (internal quotation marks omitted).

Once a prevailing party is identified, the court then calculates the "'lodestar figure' by taking the number of hours reasonably expended on the litigation and multiplying by a reasonable hourly rate." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). Finally, the court must decide "whether to enhance or reduce the lodestar figure based on an evaluation of the *Kerr* factors that are not already subsumed in the initial lodestar calculation." *Id.*

Indeed, even when attorneys' fees are awarded to a prevailing ADA plaintiff, the district court retains discretion to determine the proper amount of the fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). As the United States Supreme Court has held:

> [T]he district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters.

*Id.* The Court has also explained that appellate courts "must give substantial deference" to the trial court's fee determinations. *Fox v. Vice*, 131 S. Ct. 2205, 2216 (2011).

Trial courts "need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees [in the civil rights context] (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* The district courts "may take into account *their overall sense of a suit*, and may use estimates in calculating and allocating an attorney's time." *Id.* (emphasis added). The Supreme Court "can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it." *Id.*

However, district courts must "provide a concise but clear explanation of its reasons for the fee award . . . . [T]he district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437. Utilization of the *Kerr* factors, therefore, provides a measuring stick whereby an appeals court

6

can evaluate whether the district court acted within its broad discretion to enhance or reduce a fee award based on the facts of a particular case.

The *Kerr* factors include: "(1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases." *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

In this case, there can be no question that Plaintiff was the prevailing party, as an entry of summary judgment was made in his behalf and the various architectural modifications were ordered by Judge Sandoval. The lodestar amount of the fees requested equates to $13,997.50, or 50.9 hours of work at a rate of $275 per hour.

As an initial reduction to the amount sought, the Court finds that a "haircut" of 10% is warranted based on Defendants' good faith efforts to comply with the ADA once they received notice of the specific violations. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013); (*see also* Hearing Transcript 6:23). This percentage reduction is based on an exercise of the Court's discretion and may be made "without a more specific explanation." *Id.* (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008)). Accordingly, any award granted by the Court will be reduced by $1,399.75. The Court will now discuss the *Kerr* factors to determine whether the award should be further modified.

///

**1. Time and Labor Required and Novelty of the Issue**

Plaintiff concedes that this matter "was relatively routine" and conformed to his counsel's area of practice. (Mot. Att'ys' Fees 7). In fact, it appears that Plaintiff's counsel practices primarily, if not exclusively, in the area of ADA compliance. (*See* Hayward Decl. ¶ 6, ECF No. 20-4). The straightforwardness of this case weighs against a high fee rate and a high fee award. *See Moreno*, 534 F.3d at 1116 (holding that the district court "may properly use the simplicity of a given task as justification for a reduction in the rate for the hours spent performing that task or as a justification for a reduction in the overall rate").

Here, Plaintiff's counsel spent over fifty hours responding to a single motion for summary judgment, drafting a motion for summary judgment, and conducting discovery on a case that Plaintiff described as routine. The court finds this to be a bit excessive, particularly given that certain entries on counsel's time sheet provide little explanation as to the substance of the work performed.

For example, on June 12, 2008, Plaintiff's counsel spent .2 hours to "[r]esearch Nevada Secretary of State's Home Page." (Billing Statement 1, ECF No. 20-2). There is no indication of how this research related to Plaintiff's case. *Hensley*, 461 U.S. at 437 (holding that fee applicants "should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims" and that time entries should, at the very least, "identify the subject matter of [the] time expenditures"). Likewise, on July 28, 2008, counsel's entry in its entirety reads "Notes to File." (Billing Statement 1). The Court has no idea how to interpret such an entry, which precludes the Court from determining whether that time entry constitutes a reasonable fee. *Gonzalez*, 729 F.3d at 1203 (holding that the court may conduct an "hour-by-hour analysis of the

8

1  fee request" and exclude those hours that are unreasonable). Both of these entries will be
2  deducted from the requested award.
3     Furthermore, the Court finds that Plaintiff's failure to provide Defendants with sufficient
4  prelitigation notice of The General Store's various ADA violations also warrants a reduction in
5  the fee award. Although lack of prelitigation notice cannot serve as the basis to deny attorneys'
6  fees to a prevailing ADA plaintiff, the Ninth Circuit has clearly held that "a district court may, in
7  its protraction analysis, consider whether a plaintiff provided prelitigation notice." *Jankey*, 537
8  F.3d at 1132. "Prelitigation notice is not required, and failing to provide notice is not unjust, but
9  district courts have discretion to consider all kinds of non-required conduct in deciding whether
10 litigants have protracted litigation." *Id.*
11    Plaintiff could not provide solid proof that the alleged letter describing the ADA
12 violations was actually addressed and mailed to Defendants before this lawsuit was filed or that
13 the letter clearly identified how Defendants were offending the ADA. (*See* Hearing Transcript
14 4:1–6:23). Given Defendants compliance with ADA requirements once notice was provided, the
15 Court finds that the lack of prelitigation notice in this case directly caused the action to run
16 longer than it otherwise would have. Plaintiff's counsel expended additional time that may not
17 have been necessary had Plaintiff provided Defendants with a proper written complaint before
18 pursuing litigation. Thus, the omission of prelitigaiton notice in this case supports a reduction in
19 the fee award. *Jankey*, 537 F.3d at 1132.

20              **2. Requisite Skill, Preclusion of other Opportunities, and Customary Fee**

21    The Court acknowledges that ADA litigation requires familiarity with a specific area of
22 statutory law. Attorneys who provide experience and specialized skill should be compensated
23 accordingly. *See Kerr*, 526 F.2d at 70 (noting that the skill required to properly perform the legal
24

9

service as well as the attorney's experience should be considered when granting an award). However, the court should consider whether the acceptance of a particular case excluded the attorney from pursuing additional opportunities and whether the fee charged is customary for the location and work performed. *Id.*; *see also Fischer*, 214 F.3d at 1122 (holding that an excessive fee rate should be reduced to the "prevailing market rate" when calculating the lodestar amount).

Plaintiff's counsel "concedes that he was not precluded from accepting other employment due to this matter." (Mot. Att'ys' Fees 12). Moreover, the declarations submitted by Plaintiff in support of his Motion indicate that a customary fee for an experienced litigator in Northern Nevada falls within the range "of between $200.00–$300.00 per hour, depending on the complexity of the issues involved." (Hayward Decl. ¶ 5; *see also* Hardy-Cooper Decl. ¶ 2, ECF No. 20-5). Plaintiff's requested fee rate in this case, therefore, pushes the upper limits of what may be considered reasonable in this location for a case that counsel agrees was routine.

### 3. Results Obtained, Attorney's Expertise, and "Undesirability"

The results obtained in this case were precisely what Plaintiff sought—removal of the architectural barriers at The General Store, though it is unclear whether Plaintiff was a regular customer or a one-time shopper. Accordingly, this factor weighs in favor of granting Plaintiff's motion at the rate requested by his counsel.

As discussed above, Plaintiff's counsel apparently focuses his practice on ADA issues, which likely qualifies as an area of expertise for purposes of attorneys' fees. The undesirability of contingent-fee public interest cases is well understood, particularly when the case at issue is brought against a business; nevertheless, when such cases are legitimately brought to correct societal wrongs, they provide an important benefit. *See Walker v. Carnival Cruise Lines*, 107

F. Supp. 2d 1135, 1143 (N.D. Cal. 2000).  Thus, these factors weigh in favor of Plaintiff's requested fee amount.

### 4. Fee Award

The Court finds that the remaining *Kerr* factors are neutral in the present case.  Based on the preceding discussion, the Court determines that the fee rate proposed by Plaintiff is slightly high given the fact that this was a routine ADA case.  The Court, therefore, finds in its discretion that the requested rate of $275 should be reduced to $225.  Beyond the complexities inherent in ADA litigation, this case posed no particular hardship or novelty such that Plaintiff's counsel was required to perform extensive research or rely substantially on his past ADA experience.

The reduced rate compensates counsel for his expertise in the applicable area of law, without flirting with the boundaries of what constitutes a reasonable contingency rate in Northern Nevada.  This rate reduction also takes into account that counsel was not precluded from performing additional work concurrently with Plaintiff's case, while still serving the purpose of attracting qualified counsel to represent ADA plaintiffs. *Moreno*, 534 F.3d at 1111 (stating that "the district court must strike a balance between granting sufficient fees to attract qualified counsel to civil rights cases and avoiding a windfall to counsel").  The Court finds that $50 is a reasonable reduction to the rate because it places counsel's rate within the realm of compensation deserved by an experienced attorney, but weighed against the routine nature of this particular case.

Based on a $225 rate, and granting an award of fees for all hours worked, with the exception of the .3 hours identified previously, as well as the $1,399.75 reduction noted above, the Court grants Plaintiff an award of attorneys' fees in the amount of $9,985.25.

///

**B. Expert Witness Fee**

The Ninth Circuit has recognized that the ADA authorizes a court to shift the prevailing plaintiff's costs such as expert witness fees to the defendant. *Lovell v. Chandler*, 303 F.3d 1039, 1058 (9th Cir. 2002) ("First, because the term 'litigation expenses' normally encompasses expert witness fees, we hold that the statutory provision provides direct authority for the award of expert witness fees."). However, if an expert's fees are unreasonably high or excessive given the nature and complexity of the case, the court may reduce the award of fees to reflect compensation for only that work which is "crucial or indispensable" to the litigation. *Rodriguez v. Barrita, Inc.*, ---F. Supp. 3d---, 2014 WL 2967925, at *13–14 (N.D. Cal. July 1, 2014). Indeed, only those witness fees that are reasonably incurred should be awarded. *Norkunas v. HPT Cambridge, LLC*, 969 F. Supp. 2d 184, 200–01 (D. Mass. 2013) (citing *Lovell*, 303 F.3d at 1058) (finding excessive travel time and expert preparation for deposition and testimony to be unreasonable and therefore not compensable).

In this case, Evans billed Plaintiff a total of $7,889.80 for 68.5 hours of work. (Witness Information, ECF No. 16-4, at 28). Evans reported 30 hours of travel time at a $35 per hour billable rate. (*Id.*). He also claims to have spent 37 hours surveying The General Store and preparing the Audit Report relied upon by Plaintiff in this litigation. (*Id.*). Evans also billed Plaintiff for two hours of administrative costs, without any explanation of what that means, as well as lodging, meal per diem, and a mileage expense at $.585 per mile, which totaled $863.11. (*Id.*). Additionally, Plaintiff was billed $618.10 for an "Office Surcharge @ 8.5%." *Id.* These entries represent the totality of Evans's explanations for the work he conducted and the amount he billed. Plaintiff's Motion offers no further explanation.

First, the Court finds the reported travel time to be excessive in this case. Evans Consulting Services LLC is located in Albany, Oregon. (Cumulative Vitae, ECF No. 16-4, at 30). The Court takes judicial notice of the fact that Albany is located 503 miles from Mound House, Nevada. By car, traveling from Albany to Mound House would take approximately nine hours, possibly ten if stops are made and traffic is slow. It appears as though Evans made only one trip to The General Store and that his on-site evaluation took a single day. (Evans Decl. ¶ 2, ECF No. 16-3) ("On February 18, 2009, I conducted a detailed site inspection . . . ."). Therefore, the Court would expect approximately twenty hours of travel time and about 1,100 miles of travel distance.[1]

The burden to demonstrate the reasonableness of fees is always on the applicant and where the court cannot determine reasonableness of a requested fee because of insufficient information, that burden is not met. *Hensley*, 461 U.S. at 437. Since neither Evans nor Plaintiff provides any sort of summary explaining the time and distance Evans traveled in this case, the Court is left with ten hours of travel time and 375.4 miles of travel distance unaccounted for. Thus, the Court finds that the expert witness fee request should be reduced by $569.61.[2]

Second, the Court finds that the total time spent surveying and preparing the Audit Report is unreasonable given the nature and complexity of this case. Evans billed Plaintiff for 37 hours at a rate of $125 per hour. It appears that only 8 of these hours were actually spent surveying The General Store property for ADA violations, (Evans Decl. ¶ 2), though Evans's billing sheet simply lists a lump sum of 37 hours without further explanation. This means that

---

[1] Twenty hours of travel time and 1,100 miles of travel distance provides Evans with flexibility as to both the time spent driving as well as the distance he needed to travel.
[2] Evans bills travel time at $35/hour. Ten hours of unaccounted for travel time at $35/hour equals $350. This is added to a reduced mileage expense of $219.61, which is calculated by multiplying the mileage rate of $.585 by 375.4 of unaccounted for miles.

13

Evans is claiming that it took him 29 hours to prepare the "Compliance Audit," which consists of 15 pages of analysis and 22 pages of pictures. (*See* Audit Report, ECF Nos. 16-3, 16-4).

The Court is given absolutely nothing by way of explanation for why a purported expert would need nearly 30 hours to compile findings, draft an analysis, and attach photographs to that analysis in this routine case.  And the Court's ability to analyze the reasonableness of Evans's reported time is severely crippled by the complete absence of itemized time entries or discussion. The Court will not simply sit back and accept Plaintiff's and Evans's word that the time Evans claims to have spent on this case was all crucial or indispensable. *See Rodriguez*, 2014 WL 2967925, at *14.  To blindly award a fee based on nothing more than Evans's undetailed charge would constitute gross irresponsibility on the Court's part.  Thus, the Court is compelled to reduce the number of hours billed by Evans for which Plaintiff is entitled to reimbursement.

The difficulty, however, is determining how many of Evans's billed hours should be cut, since neither he nor Plaintiff have sought to assist the Court by itemizing the blanket charge. Regardless, the Court finds that a reduction of half of those remaining hours should suffice. Accordingly, the expert witness fee amount should be reduced by $1,812.50.[3]

Third, the Court finds that the amount of per diem requested by Evans is excessive. Evans claims that he is entitled to per diem for five days.  However, there is nothing in the report indicating that it took Evans five days to travel to Mound House and conduct the survey.  The drive from Albany to Mound House could certainly be done in a single day, and the evidence

---

[3] Evans billed a total of 37 hours for "Survey and Report Preparation." (Witness Information, ECF No. 16-4, at 28). The Court finds that 8 of these hours were spent at The General Store conducting the on-site inspection.  Thus, the remaining 29 hours are all allocated to preparing the actual Audit Report.  This is an excessive amount for a document that incorporates only 15 pages of analysis and 22 pages of pictures.  Without additional assistance from the parties regarding the amount of time preparing the Audit Report should have taken an expert of Evans's alleged caliber, the Court is left to determine what is reasonable given the facts of this case. *Gonzalez*, 729 F.3d at 1203. Cutting the hours in half leaves Plaintiff with 14.5 hours allocated solely to preparing the Audit Report.  The Court finds that 14.5 hours is more than enough for the amount of work Evans was required to perform in this case.  A reduction of $1,812.50, therefore, consists of 14.5 hours of work at Evans's rate of $125 per hour.

14

suggests that the survey itself only took a single day. Returning to Albany should have also taken a single day. Thus, Evans is entitled to meal per diem for only three days since, from the Court's perspective, there is no justification for the extra two days. The fee award, therefore, should be reduced by an additional $100.

And fourth, the Court finds that the "Office Surcharge" of $618.10 is unreasonable and will not be awarded. As with Evans's other entries, there is simply no explanation of what constitutes an office surcharge or how it relates to Plaintiff's case. Evans indicates that the surcharge is 8.5% of the total billable costs and that "[t]otal billable costs includes Professional Fees and Charges and Non Service-Related Costs." (Audit Report, ECF No. 16-4, at 29). Yet there is no further explanation of what that charge covers, and the Court is further confused by the fact that the Evans's bill already includes a charge for administrative costs of $50 for two hours of work. (*Id.*). From the record before the Court, it appears that this charge may simply be an attempt by Evans to pad an already excessive bill; there is simply no way to determine whether it is a reasonable fee. *See Gonzalez*, 729 F.3d at 1203. Thus, the $618.10 will be excluded from the awarded expert witness fee.

Based on these reductions, the Court finds that Plaintiff is entitled to recover an expert witness fee of $4,789.59. In addition to this amount, the Court also awards Plaintiff the other costs previously awarded of $350 for the filing fee and of $225 for the legal process service fee, for a total cost award of $5,364.59.

///

///

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that Plaintiff's Motion for Attorneys' Fees (ECF No. 20) is GRANTED in part and DENIED in part.  Plaintiff is entitled to recover $9,985.25 in attorneys' fees and $5,364.59 is costs, which comprise a total award of $15,349.84.

IT IS SO ORDERED.

Dated:  March 27, 2015

_____
ROBERT C. JONES
United States District Judge